(No. 4633-

LEROY SHANNON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 9, 1961.*

*Petition of Claimant for rehearing denied July 28, 1961.*

JOHN R. SNIVELY, Attorney for Claimant.

GRENVILLE BEARDSLEY, Attorney General; SAMUEL J. DOY, Assistant Attorney General, for Respondent.

TOLSON, C. J.

On July 15, 1954, LeRoy Shannon filed his complaint seeking an award for injuries sustained while working in the woodworking shop at the Illinois State Penitentiary, Joliet, Illinois. The complaint consists of two counts, i.e., negligence and violation of statutory duty.

The case was argued orally on April 21, 1961, and the Court, after examining the pleadings, briefs and arguments, and Commissioner's Report, finds that the latter fairly states the facts, and arrives at the proper conclusion.

The Court, therefore, adopts the Report of Commissioner Presbrey, which is set forth as follows:

"The evidence was taken in this cause on October 23, 1958 in the City of Joliet. John R. Snively represented claimant, LeRoy Shannon, and Samuel Doy, Assistant Attorney General, represented respondent.

"This is a claim by LeRoy Shannon to recover alleged damages for personal injuries sustained by him while an inmate in the Illinois State Penitentiary. After claimant's confinement to the penitentiary, he was processed in the usual manner.

"After holding several jobs in the institution, he was assigned to the furniture factory on March 6, 1953. Adrian Hartfield was the superintendent of said factory. According to the testimony of respondent's witness, Adrian Hartfield, claimant was assigned to the furniture factory at his own request. His first assignment was as a janitor or porter. From there he was transferred to the sanding line, and thereafter he was put on a drill machine. According to the superintendent, he requested to be assigned to a power saw. The power circular saw in question is like a large table with the saw blade projecting through the surface of said table. Various fixtures can be used on said saw. This request was denied at first because of lack of work. Subsequently he was allowed to work on the saw part time.

"Claimant testified that, before he was assigned to the saw, he would go over and watch the men operate it. Claimant contends that he was ordered to work on said saw. It appears from the testimony of claimant that in November of 1953 he worked on the power saw on several occasions. He stated that on the first occasion he worked for approximately a 35 or 40 minute period. He was taken to the machine by an assistant to Mr. Hartfield. Claimant had never operated a saw on a regular basis.

"On January 11, 1954, claimant testified that Mr. Hartfield's assistant, an inmate, called him over to the saw, and asked him to cut out some chair seats. It appears that the chair seats in question were made of birch wood. They were approximately 18 to 24 inches wide. The wood in question was placed on the saw table to the right side of the blade. It appears that there were pencil lines drawn on the wood to indicate the line to be cut by the saw. Claimant was wearing gloves on his hands at the time that he guided the boards through the blade. Respondent's witness, Mr. Hartfield, testified that claimant had been repeatedly warned not to use gloves while operating the saw. Claimant contends that he was issued the gloves from the office in the furniture factory, and that he used them on many occasions while operating machines in areas where he could be seen by the supervisory personnel, and that he had never been told not to use the gloves. There is no testimony in the record as to why it was an improper procedure to use gloves while operating a power saw.

"Plaintiff was asked what occurred to him as he was pushing the lumber through the power saw. He stated as follows on page 13 of the transcript:

'A. I was—I remember putting the seat into the saw, and was pushing it up, and—

Q. You say pushing it up—

A. I was guiding it through.

Q. Were you pushing it away from you?

A. That's right, That's correct, and I looked up, and I noticed I didn't have no finger, and my thumb was cut.'

"On cross examination it was brought out that the chair seat, which was being cut, was placed in a form or jig, and that said jig would keep the piece steady as the cut was made on the chair seat. The form would be pushed with the left hand, and held steady with the right hand. On page 42 of the transcript, claimant testified as follows:

'Q. What would cause the form to slide along with the wood?

A. Your hand would be holding it between the form—to keep—

Q. Your left hand would be holding part of the form too?

A. That's right.

Q. As well as the chair—would?

A. And it would slide right along with it.

Q. And as you were sliding it along on this particular day, your right hand got caught in the saw blade, is that right?

A. Yes, that's right. The pressure from the glove or something pulled it in, I don't know how, exactly.

Q. You noticed something pulling it in?

A. I don't know just exactly how it happened, all I know is I looked up, and my finger was off, and my thumb was cut.'

"On page 90 of the transcript Mr. Shannon was asked by the Commissioner whether he was using the jig at the time he lost his index finger. He stated that he was not using the jig, that lines were drawn on the chair seats, and that he was following these lines free hand while making the saw cuts.

"There was no guard present on the saw. Mr. Hartfield testified that there had never been a guard on the saw during the period that he had been superintendent of the factory, which would cover a period of approximately thirteen years.

"Respondent's exhibits Nos. 1 through 4 illustrate the saw in question. There is some dispute as to whether the claimant was using the saw with the permission of the superintendent.

"However, claimant testified that he used the saw with the permission of the assistant to the superintendent, another inmate. There was also some question as to whether claimant was using the proper gloves, and if claimant should have been using any gloves at all in the operation of the saw.

"Respondent's exhibit No. 5 shows the condition of claimant's hand.

"In the opinion of this Commissioner, claimant has failed to sustain the burden of proof in establishing negligence on the part of respondent, and in proving himself free of contributory negligence. The observance of proper safety rules would indicate that respondent should have provided a guard on the saw in question. However, there is no proof in the record that the failure to provide such a guard was instrumental in causing claimant to lose his finger. In the opinion of this Commissioner, it is not sufficient for claimant to merely testify that he does not know how the accident occurred, but that he looked up and that his fingers were gone. It is, therefore, respectfully suggested that claimant's claim be denied."

In denying an award, this Court would be remiss if it did not comment upon the palpable violation of statutory duty by respondent. In *Moore* vs. *State of Illinois,* 21 C.C.R. 282, this Court held that, while a prisoner cannot sue for a violation of the Health and Safety Act, as he is not considered to be an employee as such, yet "we will not create an anomaly by holding that a food grinder without a hopper used by a private person is dangerous, while a similar unequipped grinder used by respondent is not dangerous. Respondent should in this case be held to the same standards, as it by law compels others to abide by."

We, therefore, hold that the failure of respondent to equip the circular saw with a protective guard was inexcusable negligence.

We further find that claimant has failed to establish that he was free from contributory negligence, and, for that reason alone, the claim must be denied.

## Opinion on Rehearing

On July 5, 1961, claimant, LeRoy Shannon, by John R. Snively, his attorney, filed a petition for rehearing in this case. The matters alleged in the petition have been discussed for rehearing in the case of *Craven* vs. *State of Illinois*, No. 4866.

Upon further review and consideration, the Court does not find grounds for reversing the decision heretofore handed down.

The petition for rehearing is, therefore, denied.